**STATE ex rel. GAUNTT v. LASHER et al.**

No. 16104—Opinion Filed Feb. 9, 1926.

Rehearing Denied March 23, 1926.

**1. Elections—Primary—Declaration of Election Board Fixes Status as Nominee.**

Under section 6106, C. O. S. 1921, one becomes the nominee of his party for constable in the primary election by the declaration of the county election board upon tabulation of the precinct returns showing such one to have received the highest number of votes. One's status as such nominee does not depend upon the issuance of certificate of nomination by such board.

**2. Same—Failure to File Expense Report—Withholding Certificate of Nomination.**

Outside the criminal statutes and under section 6113, the only penalty for failure of such nominee to file report of his expenses in the primary election is withholding by the board of his certificate of nomination.

**3. Same—Provisions for Issuing Certificate of Nomination Directory.**

Construing said two sections together, the provisions for issuing such certificate by the county board is directory, the issuance depending upon the filing by the candidate of the expense report required by law.

**4. Same—Certificate — Prima Facie Evidence of Nomination.**

In such case, such certificate, when delivered in due form, is prima facie evidence of such candidate's nomination by his party —a muniment of his title to such nomination. While under section 6106, such certificate entitles such nominee to have his name placed upon the ballot for the general election, the declaration of the county board, under paragraph 1, supra, also entitles such nominee to have his name so placed.

**5. Same—No Authority in Board to Refuse to Print Name of Nominee Under Penal Statutes.**

Penal section 6121, pertaining to expense reports. of candidates, construed with the two sections preceding same, does not vest the county election board with authority and jurisdiction to refuse to print the name of a nominee in the primary upon the ballot for the general election, unless and until such nominee be convicted of the offense therein defined. Such county election board cannot, on its own opinion of the guilt of a nominee as to his expense report, or arbitrarily, so refuse to print his name upon the ballot for the general election.

**6. Same—Writing Name of Nominee Upon Ballot in Certain Cases Lawful.**

There is no provision of the election law preventing the electors, in the general election, from writing the name of the nominee of any party upon their ballots in the space provided therefor, when such nominee's name is not printed therein; and when so done, the same constitutes voting by ballot, as required by section 6 of article 4 of the Constitution in all elections by the people.

**7. Disposition of Cause.**

Under the record, plaintiff was elected constable, and mandamus lies in his favor to require the county election board to issue his certificate accordingly.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Carter County; W. F. Freeman, Judge.

Action by J. R. Gauntt to compel the County Election Board of Carter County to issue certificate of his election as constable. Writ denied. Reversed, with directions to let the writ issue.

Matson & Mathers and Pardue & Davis, for plaintiff in error.

Ahern, Fitzpatrick & Murphy, for defendants in error.

Opinion by ESTES, C. This action was by J. R. Gauntt in mandamus, to require defendants, as county election board of Carter county, to issue a certificate of election to plaintiff for the office of constable of the city of Wilson. No formal answer was filed by defendants. They appeared at the hearing and formally denied that the plaintiff was entitled to the writ, the cause being submitted on stipulation made in open court, the testimony of one of the attorneys for plaintiff, and certain admitted facts. No question is made as to the formalities of the proceedings. The grounds alleged and the contentions of defendants will appear from the matters recited herein. It was stipulated that plaintiff duly filed as candidate on the Democratic ticket in the primary election held in August, 1924; that he had two opponents in such primary and received the greatest number of votes cast; that within the time provided by law, he prepared his itemized statement in due form, setting forth his expenses in securing such nomination, and "that said expenses were within the bounds permitted by law"; that same was duly mailed to defendant, O. C. Lasher, secretary of the county election board; that same was never received by said secretary; that plaintiff thereafter "labored under the impression that he had a certificate of nomination"; that the election board duly executed a certificate of nomination to the plaintiff, but never delivered the same to the plaintiff because plaintiff's expense re-

port was never received; that the matter was never called further to the attention of the election board until November 4, 1924, the date of the general election; that upon said date, plaintiff discovered his name was not on the ballots and requested the election board to remedy the matter by placing plaintiff's name upon the ballots; that defendants refused so to do; that six of the qualified electors cast their ballots for plaintiff for said office by writing plaintiff's name upon their ballots in the space and place provided therefor; that no other candidate appeared upon the ballot of any other political party for said office in said city, and that plaintiff received all the votes that were cast at said general election for said office; that the said six votes were duly canvassed and certified by the precinct election board to defendants as the county election board; that plaintiff had duly demanded that a certificate of election to said office be issued to himself by defendants, and that defendants had at all times refused to issue same. The judgment of the court, from which plaintiff appeals, concludes:

"I don't think that any species of equity or any kind of claim would justify this court in saying he was elected, and I am not going to do it."

Let us first determine whether plaintiff was elected.

1. It is conceded that he received more votes than his two opponents in the primary; that his certificate of nomination was executed by defendants, but never delivered to him—in short, that he was duly nominated except for failure to receive his certificate. Section 6106, C. O. S. 1921, among other things, provides:

"When such board has completed its tabulation of the precinct returns, the person having received the highest number of votes for any office, in the political party before which he was declared a candidate, shall be declared the nominee for such office, and be given a certificate of nomination for the same, which shall entitle him to have his name placed on the official ballot at the ensuing election as the nominee of such party for such office."

It thus became the duty of defendants to declare plaintiff the Democratic nominee for constable, inasmuch as the returns, duly canvassed, showed him to have received the majority. Plaintiff's status as such nominee did not depend upon the issuance of the certificate of nomination by defendants. The rule may be otherwise by the statutes of other states, but here, one becomes a candidate under the primary law by the declaration of the board.

2, 3. Whether plaintiff should "be given a certificate of nomination," as provided above, depends upon section 6113, which must, under elementary canons, be construed with the above statute.

"Penalty for Failure to File Statement of Expenses. Should any candidate who has received the nomination of any political party, fail or refuse to file a full and complete detailed report, as above specified, the state or county election board, whose duty it is to issue to such nominee his certificate of nomination shall withhold such certificate, and refuse to issue same until such reports are filed. Any candidate who fails to receive a nomination, and who refuses or fails to file such report, shall be deemed guilty of a misdemeanor, and upon conviction shall be fined not less than $25 nor more than $500."

Assuming, without deciding, that under the stipulated facts plaintiff failed to file such report, the only penalty visited upon him, outside the criminal statutes, was the withholding of his certificate of nomination. He was not amenable to the provision of the above statute found in the last sentence, since he did not fail to receive the nomination. Thus, the provision of 6106, supra, that plaintiff should "be given a certificate of nomination for the same," etc., is directory, and means that if plaintiff had filed such report, he should receive such certificate, and, under 6113, if he did not do so, such certificate should be withheld.

4. Referring to the general election, section 6184, among other things, provides:

"* * * Said board shall issue certificates of election to all county candidates, and shall certify the result in each state contest to the state board, and such certificates, when properly certified to, shall be prima facie evidence of the correctness of the result in the several counties."

In mandamus to obtain possession of the office, such certificate is conclusive evidence in favor of the holder thereof to the office. State ex rel. Love v. Smith, 43 Okla. 231, 142 Pac. 408; Ross et al. v. Hunter et al., 53 Okla. 423, 157 Pac. 85. It is apparent how such certificate would be conclusive evidence in a contest for the mere possession of the office between one who holds such certificate and one who does not. In all cases, the certificate of election as well as of nomination is prima facie evidence. The certificate of nomination, if delivered to plaintiff, would have been merely prima facie evidence that he was the nominee of the party—a muniment of his title to the nomination. He was deprived of this prima facie evidence by the failure to receive same. Had there been a contest growing out of

the primary, this certificate had become valuable to plaintiff as such prima facie evidence, casting certain burdens on his contestants. While, if issued, the certificate, as provided by section 6106, had entitled plaintiff to have his name printed on the ballot, the declaration of his nomination by the board also entitled him to have his name so printed. The result is reached by construing said statutes together.

5. Defendants contend that failure to file his expense report in the primary election, "bars him from the ballot or from office, if he in fact exceeded the limit fixed by law for the expenditure for the primary." They base this contention on the penal section 6121. Section 6119 fixes the expenditures of candidates in the primary. Section 6120 makes it a misdemeanor for any candidate to expend more money or other thing of value than provided in the preceding section. Section 6121 provides, among other things:

"Any person upon whom a duty is imposed by this chapter, or who is required to file a report, shall faithfully perform such duty, and file such report, stating accurately the information required. Any one who mistakes the amount of money, or fails to disclose fully the facts as to any gift, promise, etc., * * * shall be deemed guilty of a misdemeanor, and, upon conviction shall be" both fined and imprisoned in the county jail; "and should he be a nominee, he shall not be allowed to have his name appear upon the ballot, and should it be printed before such conviction, he shall be denied the right to hold office, if elected. If it be a person elected to an office in the general election, he shall not be entitled to hold such office. Any candidate who, expends more money, either in person or through agents, committees, or friends, than the limit prescribed herein, shall in addition to the punishment hereinbefore prescribed, be thereafter barred from holding office in this state."

Let it be noted that said statute provides if the one violating the same be a nominee, that is, one who was successful in the primary—not a defeated candidate—"he shall not be allowed to have his name appear upon the ballot, and should it be printed before such conviction, he shall be denied the right to hold office, if elected." This means that when the election board prints the name of the nominee of his party on the ballot for the general election, contemplating that his name shall be so printed without any opinion of the county board as to his guilt, and such nominee is not convicted before his name is printed on the ballots, but is convicted later, and is also elected at the general election, he shall be denied the right to hold the office. The provision, "and should he

be a nominee, he shall not be allowed to have his name appear upon the ballot," means that a guilty nominee shall not be permitted to have his name appear upon the ballot. His conviction alone would determine his guilt. If he be guilty—not in the opinion of the board, but by the judgment of a court of competent jurisdiction—such board is authorized not to print his name upon the ballot, since if elected, he could not hold the office. No other or greater authority is conferred upon the county board by said penal statutes than to refuse to print the name of such guilty nominee. This construction is apparent from what precedes and follows said provision. This entire section is penal. It defines the crime and fixes the status of the candidate who has violated the statute, that is, committed the crime. We are not called upon to construe said statute further than to hold, as we do, that under the facts of this case defendant election board had no jurisdiction or authority to enforce same other than to refuse to print plaintiff's name upon the ballot, if he had been convicted prior to printing of same. Plaintiff was not subject to conviction, since defendants stipulate that his expenses were within the law. It may be contended that the provision of said statute, that one who "fails to disclose fully the facts" in said report as to his expenses, is broad enough to include one who wholly fails to make such report. This is unnecessary here to be decided. Said statute, and indeed no other statute, vests in the county election board the judicial authority to determine such question. Whoever is amenable to the provisions of any of said penal statutes, the penalties thereof could follow—even so far as the board is concerned—only upon conviction. There is no authority therein by which the county board may arrogate unto itself the power to defeat the will of the people based on its mere opinion of the guilt of the nominee, whether that opinion be based upon a report which is filed, or on a failure to file any report.

6. There is no provision of the law preventing the qualified electors from writing plaintiff's name in the proper space, as they did, upon their ballots. When so done, same constituted voting by ballot under section 6, art. 4 of the Constitution, providing, among other things, that in all elections by the people, the vote shall be by ballot. It is not contended that the six votes cast for the plaintiff at the general election were by mutilated ballots. While the election law contemplates that no one should be allowed to become a candidate in the general election who had not been a candidate at the pri-

mary, either a party candidate or an independent, plaintiff, as shown herein, was in fact the nominee of his party and entitled to have his name printed upon the ballot at the general election. It is undisputed, as shown by plaintiff's petition, that said six votes were duly certified to the election board. As held in Town of Grove v. Haskell et al., 24 Okla. 707, 104 Pac. 56, elections are the ultimate expressions of the sovereign will, and it is the duty of the courts to sustain them, where it can be done by a liberal construction of the laws relating thereto, rather than defeat them by requiring a rigid conformity to technical statutory directions, which do not affect the substantial rights of the electors. In applying this general rule, we think the provisions of the statutes relating to the duty of plaintiff to file his expense report, and the disadvantage he might have suffered by his failure to receive his certificate of nomination, cannot be construed to defeat the will of the people in nominating plaintiff and in electing him so as aforesaid. We seek to determine judicially the legislative intent in the enactment of all these statutes—not what should have been enacted.

7. We conclude, therefore, that plaintiff was elected to the office of constable; that it was the ministerial duty of defendants to furnish him with his certificate of election. The county election board has only such authority as is conferred upon it by statute, directly or by implication. The refusal to issue a certificate of election to plaintiff was in derogation of the public will as expressed by the ballot, and was calculated to and did deprive plaintiff of his rights.

Let the judgment be reversed, and the cause remanded, with directions to let the writ of mandamus issue against defendants, requiring the issuance of certificate of election to plaintiff.

By the Court: It is so ordered.

Note.—See under (1) 20 C. J. p. 128 §146; 2 R. C. L. Supp. p. 924. ( 2) 20 C. J. p. 281 §405. (3) 20 C. J. p. 128 §146. (4) 20 C. J. p. 129 §146; anno. 9 L. R. A. (N. S.) 916. (5) 20 C. J. p. 146 §171; 9 R. C. L. p. 1090. (6) 20 C. J. p. 160 §190. (7) 38 C. J. p. 723 §321; anno. L. R. A. 1917E, 480.